10-0750 Good Morning, Presiding Justice Garcia, Justices Gordon, Justice Cahill, and Counsel. Your Honor, Austan Bartlett, on behalf of Defendant Appellant Honeywell International, Inc., I will be addressing two primary issues in the time before you today, whatever other issues the Court is interested in. Primarily, the scattered evidence test that was applied by the Circuit Court of Cook County, and secondly, the access to evidence prong that was analyzed by the Circuit Court. My co-counsel, Doug Winter, who represents Boeing, will be addressing the Washington forum issue, which is our alternative argument, as well as Piper Aircraft. We intend to split our time evenly. Turning to the first issue, which is the scattered evidence test. In this case, the Circuit Court, on page 5 and 7 of its opinion, articulated various forums where evidence was located, including Turkey. But the Court eliminated Turkey from consideration based upon the following categorical rule. When trial witnesses and documents are scattered in different countries and counties, no single forum can be more convenient than another. And that's twice in its opinion, on page 5 and 7, which is in our appendix. And if you look at Illinois case law on this issue, on the scattered evidence rule, in applying this kind of categorical reflexive rule, respectfully, the Circuit Court erred in two ways. One, he eliminated the requirement that evidence be located in the plaintiff's chosen forum. And secondly, he overlooked the fact that even though evidence may be located in more than one forum, it may be predominantly concentrated in one of those forums. Going to the first issue, in terms of what the Circuit Court overlooked, the requirement in that chosen forum. Did you, in fact, establish that the evidence was predominantly in one forum rather than the other? Justice Garcia, we did. We established that the evidence was predominantly in Turkey in two ways. One, we identified by category a plethora of damages and liability witnesses that are essential to our defenses in this case. And those are set forth in the brief, but they range from employees of World Focus and Atlas Jet, both of who are headquartered in Istanbul, relating to the training of these pilots, the maintenance done on this aircraft and on this component, air traffic controllers, the operational history of this airplane, the knowledge of the pilots, the flying habits of the pilots, a range of liability and damages evidence. But in addition to that, and by the way, that's in the possession of third parties, 5,000 miles from Cook County, which cannot be compelled here. But more importantly, Justice Garcia, we also agreed as a condition of dismissal to provide plaintiffs with the product liability evidence in our possession in Turkey, subject to that forum's rules on relevance. So, yes, in light of the fact that we agreed to provide our evidence in Turkey and the enormous concentration of non-party evidence that nobody can bring to Cook County, Turkey is where this evidence is concentrated. And here's, in this particular case, if you look at page five of the Justice. When you say no one can bring those witnesses to Cook County, are you saying that those witnesses are key to your defense, or could they be something that the plaintiffs would have to bring? And if they can't, then they may lose the case here. Very good question, Justice Garcia. The answer is they are key to our defense. Plaintiffs have brought, as you know, a product liability suit claiming that the aircraft manufactured by McDonnell Douglas and the EGPWS component manufactured by Honeywell is defective. Our defense is in the heart of our case. Something else caused the accident. That's correct, causation. It is so proximate cause, as well as misuse of the product, as well as was the product in the same condition as when it left our control. And the witnesses on that issue are in possession of Atlas Jet and World Focus, who are adverse to these plaintiffs and who they do not have any control over. And we can't hail that evidence to Cook County. Now, in this case, on page five of the record, Judge Maddox, the circuit court judge, respectively, did not identify any evidence located in Illinois. But based upon the default rule that whenever evidence is scattered, no form can be more convenient, he decided it should remain here and not send it to Turkey. But if you look at other decisions from this court, for example, Burbick, or, for example, Quaid, in both of those cases, take Quaid, for example, that was a product liability suit against Baxter relating to Heparin that was administered to two twins in California. There was witnesses identified in Deerfield, Illinois, witnesses in New Jersey, witnesses in California. But the court held, in balancing the factors, that the case should be sent to California because the party witnesses, among other things, those will be available in either form. But it's the non-parties that can't be brought to this courthouse who are not within subpoena power. So in that case, it was Cedars-Sinai, for example. And the criticality of the Turkish evidence really has to be emphasized. We mentioned it in our brief, but the Turkish government has, in addition to leading the investigation, has also brought in criminal action against those who it believes are not only responsible, but criminally responsible, 10 executives of World Focus Airlines and maintenance personnel. This is why we want to go to Turkey to get the evidence we need to show that this isn't a product liability. We understand what they characterize the case as, but we need to be able to present the evidence to present our defense. And we're not saying that what they need should be ignored. It shouldn't.  You have to look at access to evidence from all parties. And that leads me to my second point. In this case, we all know Boeing's world headquarters is just blocks from the Cook County Courthouse. But proximity to the courthouse in an international form non-convenience case is meaningless. If when you show up at court, you can't present the exculpatory evidence necessary to provide a defense at trial. In this case, respectfully, it appears that the Supreme Court was more persuaded by the geographic proximity of Boeing or the fact that they do business here than- Is there a case from the Supreme Court that says that the availability of such exculpatory evidence should be a factor in deciding a form of non-convenience? Yes, Your Honor. One case would be the case of- I think it's Green v. State Farm. But I may have the- Gridley, I'm sorry, Gridley v. State Farm in 2005. In that particular case, and it's not articulated very clearly, but in that particular case, plaintiff, a Louisiana resident, sued State Farm. And it related to whether there was clean versus salvage titles in misrepresentation cases. But the short version and answer to your question is the Supreme Court specifically noted that party evidence could be brought, would be available in Illinois or Louisiana, but the non-party evidence, in that case the auction retailer and other parties, that that could not be compelled to Illinois. One of the problems, though, is that we're looking at one side of the coin because just as you can make the claim that you have evidence in Turkey that you don't have access to, if the case were in Turkey, the plaintiffs might be making the same claim that evidence they need in Illinois is not available in Turkey. Well, I'm glad you asked that question, and there's, I think, a very, I hope, clear answer to that. If you go to page 118 to 122 of the record, you will see the defendant's stipulation as a condition of dismissal to produce all of their product liability evidence in Turkey. Additionally, and so because of that, they will have access to our evidence in Turkey. The asymmetry is if we stay here, we can't get the third-party evidence to Cook County. Well, you don't know that for sure. We do, and may I explain why? Sure. Atlas Jet and World Focus did not operate any flights to the United States, so we can't implead them or file a third-party complaint and join them to this lawsuit. That's the first thing. The second thing is because they are located in Turkey, we can't compel them to appear live at trial. In the Illinois Supreme Court, Vinson, Green, Doughty, a variety of cases have noted that the inability to compel live witness testimony prejudices parties, as the court knows from their trial experience. And so because of that, only in Turkey are we able to join them, the necessary parties for the full and fair adjudication of this case, and that's why this case should be sent to Turkey. On a broader level, I just wanted to mention a few final thoughts and then turn it over to Mr. Winter. It seems that the big-picture result of the circuit court's order here is, if a product is made in the United States, it's okay to keep the case in Illinois, even though no evidence is located in Illinois. And because Boeing, one of the two leading manufacturers of airframes in the world, is located here, Cook County has already become the form du jour for foreign nationals and international air crash cases. In this case, we ask that the court take a very hard look at how the court apply the scattered evidence test. Because I think if you do so, what you'll find are that there's three major problems with what happened in this inflexible rule. One, in adopting a categorical rule that whenever evidence is scattered, even if evidence isn't present in Cook County, the court failed in its task to qualitatively assess whether one form is more convenient than another and whether the evidence is predominantly concentrated in one form like Turkey. Secondly, what the circuit court did is they essentially elevated the plaintiff's choice of form, and in this case, almost all our foreign nationals, which deserves less deference, not no deference, but less deference, elevated their choice of form to really a dispositive consideration. Because so long as evidence is scattered, which it will always be in an international air crash case, it will inevitably be scattered. The case, by default, will remain in Cook County. So the Cook County taxpayers and the Cook County court system are going to adjudicate a case that relates to the death of 32 Turkish citizens on a domestic Turkish flight. Respectfully, the Form 9 Convenience Doctrine was designed to apply in precisely these sets of circumstances. And I know I'm short on time. I just want to mention two cases that I've asked the court to review that are recent, very recent cases in international air crash cases. One was a decision decided by Judge Aspin in January of 2011, and that's the In-Ray McNair Strait case, a crash in Indonesia. In that case, Boeing and Honeywell were sued. Same arguments were before the court that aren't here. Judge Aspin weighed everything, and he decided that the case was more properly brought in Indonesia because that was Indonesian citizens who were killed on an Indonesian flight, even though the manufacturing and design evidence was here. Right here, defendants agreed to bring that evidence to Indonesia. And Judge Aspin found that because of that, the private and public interest factors decidedly weighed in favor of Indonesia. Respectfully, we'd ask that this court follow that same rationale. Thank you very much. Thank you. I think he took up a lot of your time. Then I will try to move efficiently, Your Honor. Douglas Winter for the Boeing Company. What we are witnessing here is the abandonment of the fundamental principle of equity, the abandonment of discretion. Did that happen in Vivas and Thornton as well? I believe it did, Your Honor. So basically what you're asking us to do is to disagree, depart from Vivas and Thornton. Not necessarily, because the court below here, I believe, abandoned discretion even further. We're seeing an inflexible rules-based approach now to forum nonconvenience. And that approach forgoes the interests of other jurisdictions in favor of Illinois. That's what the rules-based analysis does. So it does not vindicate private interests. It does not vindicate public interests. It vindicates plaintiff's interests. And yet, we've been instructed by this court and the Illinois Supreme Court, that little deference is to be given to plaintiff's choice of forum in the forum nonconvenience analysis. It's a matter of equity. And I would point to the United States Supreme Court's decision in Piper Aircraft v. Is the plaintiff entitled to any deference whatsoever in a case like this? In this matter, my understanding is the plaintiff is entitled to a modicum of deference. Now, how much is that? That's an interesting subject, Your Honor. Isn't that what we should be talking about? On the deferential side, this court below said that the plaintiffs were entitled to very little deference. And yet, he found it in their favor. Yes, indeed. And that's because of the application of this rules-based analysis. Discretion is the heart of equity. In Piper Aircraft, the United States Supreme Court looked at a case that is, in one sense, in the proverbial all fours with this one, and yet this case is much more complex and much more expensive. How does this case differ from Davis? Excuse me? How does it differ from Davis? It differs from my perspective. I did not try Davis. But it differs in its approach to the rules-based analysis. In other words, now there is no discretion, in my perspective, being exercised by the trial court. The trial court is simply saying there is this rule, there is this rule, and there is this rule. And a fundamental difference, I believe, is that if I may, there is no evidence that is relevant to this litigation in the state of Illinois. None whatsoever. So, Mr. Wynne, are you saying that, in effect, the absence of exercise of discretion was an abuse of discretion? Because it remains that that's the standard, the controlling standard. And you're asking us to exercise that discretion that the Supreme Court did not? I believe so, or to direct the circuit court to exercise discretion by actually analyzing these principles. Would that be an alternative disposition to remand with specific instructions that the factors be set out? That the factors be weighed properly. Weighed in more clear form. And let me give you a very, very, I think, clear example of the problem with the rules-based analysis. Public interest factors. The court below did not assess, just as it did not assess the locations of evidence when it applied the scattered evidence rule, did not assess the true interests of the jurisdictions that were potentially involved here. So that no weight whatsoever was given to the notion that Turkey was the site of the accident, Turkish airline, Turkish regulators, Turkish criminal investigation, that in other decisions would weigh heavily in favor of the public interest. Look at this from the reverse, if you may. Airbus is Boeing's competitor. Airbus is headquartered in France. Now, a United Airlines flight takes off from Chicago, flying to Carbondale, piloted by U.S. pilots, maintained by Illinois citizens, Illinois residents. Fifty-six Illinois citizens or residents are on board, and there's one resident of Arkansas. And that plane crashes going into Carbondale. Now, no one would stand here with a straight face and say that France has a preeminent interest in that case because Airbus is headquartered in France. And that's the problem with this analysis. This is a Turkish accident. Well, wouldn't it depend in part on what the plane's cause of action is based on? Perhaps. And that comes to this notion of another inflexible rule, the product's liability rule, because that has been given some – So if the plane had filed his loss of inference against Airbus, and his only claim was a defect in the – an underlying defect in the plane itself, that wouldn't be entitled to some deference? I don't believe so. I don't believe so. We'd have to forego the notion that they're a civil law jurisdiction and attribute the same legal system to the French. But in this case, we have allegations of product liability, and they are, by rule, by inflexible rule, said to prevent the court from considering everything else that goes on, the maintenance of the plane. We have always maintained that the foreign nonconvenience initial decision should be an abusive discretion when made by the trial judge. Isn't that the case? It is committed to the discretion of the trial court. But, of course, discretion must be exercised within its bounds. In other words, if the court makes an error of law, then whether the court has exercised discretion – But it's a highly deferential standard of review in our case. It is deferential. But I submit here, Your Honor, that here – Here we have an experienced trial judge who presumably looked at all of the factors involved in the case and exercised his discretion. I am certainly not impugning this well-known – Of course not. I know you're not. But if you read the – You're arguing that in this case he was dead wrong. And if you read the order and opinion, you will see that there is not a way – there is not a way in various application of these rules. If I can mention one other element there – Sure. And it goes to discretion once again. There are private and public interest factors that are not discussed by this court in its order. Improminent among them is the potential for duplicative litigation, which I think should be of great concern to us. These plaintiffs can bring lawsuits against potentially liable parties in Turkey. We request judicial notice of the fact that that was happening. That was rejected. However, if Boeing or Honeywell is found liable here, then inevitably one or both of those parties will need to pursue those people in Turkey. So duplicate litigation is definitely a possibility here. It should be considered. That's true in almost every foreign nonconvenience case, isn't it? Yes, we're talking about international foreign – I know. I know. I'm adding my question to international cases. And here is the issue that's underlying all of this. Who pays? Who is going to pay for this? And I think that's a very important question. Is it the taxpayers of Illinois, which is the result of this rules-based analysis, or Turkey? And that, I think, is a very important question that is left unanswered here because those issues are not discussed. Turkey has a great interest in this accident. And that public interest, as well as the private interest, in terms of those that have been discussed, need to be assessed. But your client is right here in Chicago. Yes, and that's all my client is, Your Honor, in this case. In this case, there is no practical connection whatsoever, none, other than the fact that my client and Honeywell do business in Chicago. But if that's the rule, that's the bull's-eye rule. That basically says Cook County, anyone who is doing business in Cook County, you can be sued here for anything. And none of the four non-convenience factors count. And that, again, I would insist, is rule-based inflexibility. And that's what you're saying is, in fact, approaches a legal ruling that, if it's wrong, it constitutes an abuse of discretion. Because that is the only factor. That is the only practical connection. And that makes this case very different from others. The only practical connection is that Boeing and Honeywell do business here. There is no other connection to the litigation. On one final note, if I may, we clearly believe that Turkey is the place where this litigation should proceed. We believe that the taxpayers of Turkey should pay for this litigation. But as an alternative, given this Court's observation in Vivas concerning the fact that the parties there did not suggest transfer to another forum within the United States, we in the alternative move for transfer to the State of Washington for three primary reasons. First, the target product at issue here is the Enhanced Ground Proximity Warning System, which was designed and manufactured by Honeywell in the State of Washington. That product was not original equipment on the Boeing airplane. Second, there are no witnesses, as I mentioned. There is no evidence in the State of Illinois. When it comes to the design-manufacture side with the Proximity Warning System, it is in the State of Washington. It intersects the aircraft. It is in the State of California and also in the State of Washington, where Boeing's manufacturing facilities are. So is all the accident investigation material when it comes to Boeing. That is where its accident investigation is centered. Second, policy reasons. Policy reasons. The deterrence of defective products. We come down to it in a most significant relationship test under choice-of-law principles. Under any other analysis, when it's state-to-state, it's the state where the product is designed and manufactured that's going to have a greater interest in avoiding defective products, not a state where a company happens to do business. And unless there are further questions, I'll conclude. All right, thank you very much. Thank you very much. May it please the Court of Counsel, Curtis Minor, on behalf of certain of the plaintiffs, I'll be presenting the argument and the response for all of the plaintiffs. Okay. Abuse of discretion. Obviously, that's the standard we're here on. It is not enough for Boeing and Honeywell to try to show that reasonable minds disagree with what Judge Maddox decided here. Reasonable minds can differ. What if we were to rule that Judge Maddox applied an inflexible rule in the context of this form of nonconvenience issue and we determined that the application of an inflexible rule is not consistent with the exercise of discretion in the court of equity? Well, I don't think he did. If by the inflexible rule, you mean the rule that Boeing has been trying to suggest that Judge Maddox applied, that because our corporate headquarters, World Capital, is down the street, that means that everything about us Or the rule that if the evidence is scattered in a variety of jurisdictions, it doesn't matter where you file suit. Those are the two primary issues they raised with Judge Maddox's decision. As to the first one, on the corporate headquarters issue, it's just one of several factors that he addresses. And they take him to fault for having that be the first factor he addresses. But the way the private interest factors are structured, the sort of laundry list of what you have to go through, that's the first one that courts are supposed to look at. So there's nothing surprising about him taking that one up first. And I think it's also clear that under the precedent of the illness, you've got damages evidence and you've got the accident evidence, how the accident happened. As to the damages evidence, that's on our shoulders. If we can't produce that evidence here, if we can't show the damages suffered by these families, there's going to be no damages to recover. That's not going to be Boeing and Honeywell's burden. So what we're really talking about is the accident evidence. And there's three things to keep in mind here. One, Boeing and Honeywell participated in this accident investigation. I would think the very first people that we would depose and the people who would be called at trial to talk about the accident investigation, how this accident unfolded, is their very own employees. Two, they talk about their inability to compel the testimony of the Turkish air accident investigators. Well, that's true, isn't it? It is true. And there's also the flip side issue of we would face those sort of challenges, the plaintiffs would face those sort of challenges in Turkey. But it's their, how do we know that? Well, you wouldn't face that problem, though, if they stipulated that they're going to produce everything under their control. It could cover what's under their control. And again, plaintiffs believe that's a bit of a phantom offer based on the way the Turkish legal system works, but it doesn't include third parties, NTSB, FAA, doesn't include former employees. But it's their burden to show a specificity that they won't be able to obtain that evidence. What's to say if there are people that they want to depose in Turkey, how do we know they're going to refuse to be deposed, refuse to cooperate? There were no affidavits submitted at the trial court level to establish that. It's essentially just speculation. And a third thing to keep in mind on the accident evidence, and this is also a practical issue about the way trials actually unfold, is the accident evidence will most likely be presented through expert testimony. Experts will look at the accident investigation report there, the photographs. Much of these materials are in the public record or publicly available already. And they'll render an opinion, just like an accident reconstruction expert would do in an intersection crash at trial. Now, those experts are not going to come from Turkey. They're going to come from the United States or some other country. And the evidence that they're going to need to rely on, Honeywell and Boeing participated in this investigation. They're going to have that evidence. The accident investigation reports in the public record. It's all going to come in through expert testimony. You know, I get a sense from your argument that maybe the informed nonconvenience motion was filed a little early in the proceedings that had it been filed maybe after discovery or after this information had been developed. And certainly the information that you believe is extended to by the defendants that you may not be able to rely on in Turkey, you know, was fully in your possession. And then you could decide whether the case should be tried here or in Turkey. We didn't control when the motion was decided. When the motion was filed, the defendants made that decision. We played the chips as they met. You'll need to start wrapping up. Well, Justice Cadillac, you asked the question, how does this case differ from Vivas? And it doesn't. Not a shred. It really doesn't. I mean, we're going to just have to disagree with the other panel. I think two of us. Just disagree with yourselves, yes. But how does it really differ from the Indonesia case? I didn't hear a real distinction, unless you're really saying that, you know, in either fashion without abusing it, and you leave it at that. But maybe that's the distinction in Vivas as well, that discretion can be exercised in that fashion. And in this case, because I really wonder what would have to be present in this case to have prompted the circuit court to have exercised discretion in sending it back, I mean, what more do you really need? I mean, what did the defendants not present that, you know, you would have said, don't bother appealing? When in our judicial systems, when we set up these standards of review, they're so deferential, like abuse of discretion. And in this particular case, it's even more deferential when you set up that no reasonable person could possibly do this. You are putting a lot in the hands of the trial court. And there are cases out there where judges have acknowledged that. And I know that there's a U.S. Supreme Court case out there that says that, you know, the standard of review isn't controlling always, because if there's an error of law, that automatically leads to an abuse of discretion. Sure, if a factor was. And if those rules are found to be as inflexible as Bowen and Honeywell assert, you know, that may rise to the level of. There could be such a case, but in Judge Maddox's opinion, that was not the case. All right, well, thank you very much. Thank you. Very briefly, one minute apiece. Your Honor, first, Justice Cahill, you asked how is this case distinguished from Vivas. There are a few distinguishing features. One is, in this case, there has been a criminal action launched in Turkey against those criminally responsible. What does that have to do with anything? It is a demonstrated and specific interest, a public interest, of the Turkish government, in addition to leading the accident investigation, which differentiates it from Vivas. All the decedents here were Turkish citizens except one who was Austrian. And that also distinguishes it from Vivas. Additionally, the Vivas court, in the analysis of the opinion, did not mention the stipulation that the defendants have agreed to provide here, which we think is significant. I know that they have claimed it's a phantom offer. It's the exact same offer that Judge Aspin endorsed in that Indonesian case, which is 2011 U.S. District Court Lexus 2647. Finally, counsel had mentioned that they couldn't get the evidence of former employees. As we've mentioned, we're going to give them everything we have in Turkey, subject to the rules of Turkish law. There's a statute, 28 U.S.C. 1782. That allows a person to open up an action in federal court to take the deposition of former employees or persons who are outside the control of these defendants. Given the enormous quantity of non-party witnesses who can never be brought to Turkey, and the very small diminutive category of people who may be former employees who we suggest would be cumulative of whatever we'd provide them, that can be resolved by 28 U.S.C. 1782. So for all those reasons, we'd ask that you reverse. Thank you very much. Mr. Winter. In response to your question concerning the deterrence of defective products, first, litigation in Turkey is going to be an effective deterrent, one would think, but more important, the National Transportation Safety Board of the United States participated in this investigation, has full knowledge of what went on in this investigation, and certainly they assure that defectively designed products are taken care of. All right. Thank you. Thank you very much. The case will be taken under advisory. Court is in recess.